# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**KAREN S. COLSON,**

     **Plaintiff,**

**v.**                               **Case No.  8:10-cv-9-T-30TBM**

**TAMPA HOTEL-VEF IV OPERATOR,
INC., d/b/a Hyatt Regency Tampa Hotel,
and HYATT CORPORATION,**

     **Defendants.**

_____/

## ORDER

THIS CAUSE comes before the Court upon Defendants' Motion for Summary Judgment (Dkt. 47), and Plaintiff's Response (Dkt. 53).  The Court, having considered the motion and response, and being otherwise advised, concludes that the motion should be granted.

### Background

On October 23, 2007, Plaintiff Karen S. Colson ("Colson") arrived in Tampa, FL to take part in the American Academy of Optometry convention.  While in town she stayed at the Hyatt Regency Tampa Hotel. The night of October 26, 2007, Plaintiff ordered a cheeseburger from room service for dinner and began feeling ill the next evening.

On November 1, 2007, Colson was taken to the operating room, and was found to have contracted *E coli* 0157: H7, a particularly virulent strain of *E coli.*  She was further diagnosed with fulminant hemorrhagic colitis secondary to *E coli*, essentially a severe

inflammation of the colon. Colson's condition was sufficiently severe to mandate a complete colectomy, or the total removal of her colon. In addition to the colectomy, she suffered further severe complications due to *E coli* poisoning.

Plaintiff contends that she became infected with E-Coli after consuming Defendants' cheeseburger. Accordingly, she sued Defendants on theories of: (1) breach of express and implied warranties; (2) negligence, and; (3) strict liability. Defendants now move for summary judgment on all of these counts, contending that Colson has failed to show that she contracted *E coli* as a result of consuming Defendants' cheeseburger. The question of causation is the sole issue now before the Court.

## Summary Judgment Standard

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.* Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex,* 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson,* 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.,* 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung,* 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248; *Hoffman v. Allied Corp.,* 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.,* 881 F.2d 1041, 1045 (11th Cir. 1989).

## Discussion

As discussed above, the sole question now before the Court is the issue of causation; specifically, whether the Plaintiff has presented enough evidence such that a reasonable juror could find that Colson contracted *E coli* from consuming Defendants' cheeseburger.

Under Florida law, in order to establish causation a plaintiff must introduce evidence which shows that it is "more likely than not" that the defendant caused her injuries. *Jackson*

*County Hosp. Corp. V. Aldrich,* 835 So.2d 318, 328; (Fla. 1st DCA 2002); *Old Park Investments, Inc. v. The Vessel "LEDA,"* 469 F.Supp.2d 1201, 1209-10 (S.D. Fla. 2006). Importantly, "[a] mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced," the Court must rule for the defendant as a matter of law. *Id.* at 1210.

In food poisoning cases, while a plaintiff may establish causation by either direct or circumstantial evidence, courts have routinely found that "a mere showing that a person became sick subsequent to eating food is insufficient." *Stevenson v. Winn-Dixie Atlanta, Inc.,* 211 Ga.App.572, 574 (Ct. App. Ga. 1994).

Here, Plaintiff contends that she has presented sufficient evidence showing that she contracted *E coli* from consuming Defendants' cheeseburger. First, she points out that she started to feel ill approximately twenty-two hours after consuming the burger, which is approximately within the accepted one to nine day incubation period[1] for *E coli.* Second, Colson's expert witness testified in his deposition that the cheeseburger was more likely than not the source from which Plaintiff contracted *E coli.* Asked to explain the basis of his opinion, Dr. Delaportas stated that since Colson "had a cheeseburger in the time frame of incubation, and that is more often the implicating food in these cases than not...I believe it's more likely than not it was that cheeseburger. I cannot rule out other sources." (Depo. Of Delaportes, 47-48). Based on this evidence, Plaintiff contends that she has presented sufficient evidence of causation in order to survive a motion for summary judgment.

---

[1]The incubation period is the amount of time it takes for symptoms to appear after becoming infected.

This Court disagrees.  The instant case is remarkably similar to *Campbell v. Supervalu, Inc.,* 565 F.Supp.2d  969 (N.D. Ind. 2008).  In *Campbell,* plaintiffs alleged that their five-year old son contracted *E coli* after consuming defendant's ground beef.  *Id.* at 971.  Although the plaintiffs established that their son became sick sometime after consuming defendant's beef, like here, plaintiffs presented no other evidence that the defendant's beef was tainted.  *Id.* at 980.  Noting that the child could have contracted *E coli* from, *inter alia,* almost anything that the child ate in the eight days preceding his illness, the Court found that "[a]t best, the Campbells have established that the ground beef was one possible source, among many others, for the introduction of the *E coli* bacteria into [the child's] body."  *Id.* As a result, the Court granted summary judgment for the defendant, finding that "to ask a jury to decide whether the beef was the cause of [the child's] illness would invite nothing but speculation."  *Id.* at 981.

A similar result was reached in *Thacker v. Kroger Co.,* 155 Fed.Appx 946 (8th Cir. 2005).  In *Thacker,* the plaintiff also became sick from *E coli* poisoning sometime after consuming defendants' ground beef.  *Id.* at 947.  Although the plaintiff established that the beef consumed was subject to an *E-coli* recall, the Court noted that the beef in question was recalled only as a precautionary measure, having never tested positive for *E coli.*  *Id.* at 948. As the plaintiff presented no other evidence showing that the beef was contaminated, the Court concluded that one could only speculate as to wether the Plaintiff contracted *E coli* from the defendants' beef; accordingly, the Court affirmed the district court's ruling that

there was insufficient evidence to conclude that defendant's beef probably caused Plaintiff's illness. *Id.* at 947.

Here, the Plaintiff has similarly failed to present sufficient evidence showing that she contracted *E coli* from consuming Defendants' ground beef product.  Significantly, other then establishing that she became ill subsequent to consuming the cheeseburger, Colson presents  absolutely no evidence tending to show that the particular cheeseburger she consumed made her ill.  For example, she fails to offer scientific evidence showing that the actual food she consumed (or the stock of beef from which it came) was actually contaminated, that Defendants' beef was subject to recall, that any other patrons became ill upon consuming Defendants' products, that Defendants had improper food handling procedures,[2] that Defendants had shoddy cleanliness, and/or food storage procedures, and/or that the particular burger she consumed looked, smelled, and/or tasted unusual, and/or raw.[3]

Moreover, Dr. Delaportas's opinion that Plaintiff's *E coli* poisoning was more likely than not caused by consuming Defendants' cheeseburger does little to further Plaintiff's case as his opinion is based on little more than speculation.  Dr. Delaportas, one of Colson's treating physicians, explained the basis of his opinion in his deposition.

Upon being deposed, Dr. Delaportas testified that after treating Colson his impressions of her condition were memorialized in a chart and accompanying notes.  Dr. Delaportas

---

[2]For example, that they frequently placed raw meat next to hamburger buns, or placed cooked burgers on plates contaminated by raw beef.

[3]On the contrary, in her deposition Plaintiff testified that her burger looked to be medium to well-done, was warm when it arrived, and "appeared brown, you know, cooked all the way through."  (Depo. of Colson, 56-57).

indicated that in determining the source of the *E coli* it would have been useful, *inter alia,* to ascertain the detailed food and drink history of Ms. Colson during the known nine day incubation period, to inquire into other possible sources of contamination, and to determine if other patrons of the hotel had become sick.  Dr. Delaportas admitted that none of this was done.

Asked if he could state within a reasonable degree of medical certainty the source of the *E coli* he stated that "[t]here is nothing in my notes that would indicate that I knew where she acquired the *E coli* from." (Delaportas, 21)    Indeed, it was only on cross examination by the Plaintiff's attorney, in response to a hypothetical question, that Dr. Delaportas gave his opinion that Ms. Colson "more likely than not" contracted *E coli* from Defendants' cheeseburger.  This opinion was based solely on the fact that, in his opinion, *E coli* poisoning in general is more likely than not contracted from consuming ground beef.

 In suggesting that this opinion was mere speculation, Defendants' counsel asked: "[h]ow is it not speculation if you can't tell me anything she did on the 17th, 18th, 19th, 20, 21, 22, or 23?  How is that not speculation , if you can't tell me anything she drank, anywhere she went, any person or personal contact she had or anything else on those days? How is that not speculation?" (Delaportas, 47).  Dr. Delaportas could only reply that, in his opinion *E coli* is very frequently contracted from consuming ground beef; thus, because Plaintiff consumed ground beef during the known incubation period, it was likely the culprit.

This Court agrees with Defendants that Dr. Delaportas's opinion is based on mere speculation.  In his deposition Dr. Delaportas conceded that: (1) there was nothing contained

in his contemporaneously made[4] notes indicating the source of the Plaintiff's *E coli;* (2) that he had no knowledge of what the Plaintiff ate or drank for the *majority* of the known incubation period; (3) that he had failed to inquire into other possible sources of *E coli* contamination; and (4) that he could not rule out numerous alternative sources.  Indeed, Dr. Delaportas's opinion is not based on any facts particular to Colson's case.  On the contrary, it is solely based upon his general opinion that ground beef is frequently the source of *E coli* contamination.  Such an opinion is insufficient to support a jury finding of causation.

Notably, if this Court were to conclude otherwise, then any time a Plaintiff contracted *E coli* after consuming a ground beef product within the previous nine days, that fact alone could be sufficient to send the case to the jury.[5]  Such a ruling would be unfair to defendants who would be potentially subject to liability regardless of their commitment to food safety.  Hence, Dr. Delaportas's opinion does not persuade this Court that it should depart from *Campbell* and *Thacker*, which both held that the mere fact that one eats ground beef and subsequently contracts *E coli* is not enough to prove that the plaintiff contracted *E coli* from consuming that ground beef.[6]

---

[4]At the time of Colson's illness.

[5]As long as an expert were to testify that *E coli* is "more likely than not" contracted from ground beef.

[6]Moreover, only contaminated and undercooked ground beef, not ground beef per se, poses a danger. Here, Plaintiff has presented no evidence that the particular cheeseburger she consumed  was contaminated, and/or undercooked.

In addition, the time line of when the Plaintiff became sick is unfavorable to her contention that Defendants' cheeseburger caused her illness.[7] According to Plaintiff's expert, the incubation period for *E coli* is most commonly three to four days, although it ranges from one to nine days.  Here, Plaintiff started feeling ill less than one day after consuming Defendants' burger, putting her just under the low end of the range.  As her symptoms failed to manifest during the most common period, this fact casts doubt on her contention that Defendants' burger caused her illness.

Finally, it is clear that Plaintiff could have contracted *E coli* from numerous potential sources.[8]  Among other things, *E coli* can be contracted by: (1) eating, undercooked ground beef, lettuce, fruit, nuts, and unpasteurized milk, cheese and juice; (2) consuming *any* type of food cross-contaminated with *E coli;* (3) drinking impure water; (3) person to person contact; and (4) inadequate hand washing.  Here, it is undisputed that, *inter alia,* during the incubation period Plaintiff ate salads and shook hands with various persons while at the convention.  Moreover, Plaintiff cannot recall what she ate *during the majority* of the accepted nine day incubation period.  Thus, Plaintiff could have contracted *E coli* from numerous alternate sources.

In sum, while Plaintiff may have established that the cheeseburger was a potential source of *E coli*, based upon the evidence presented, a reasonable juror could only speculate

---

[7]As Plaintiff's case consists solely on the evidence that she ate Defendants' burger and subsequently became sick, the timing of her symptoms are crucially important to her entirely circumstantial case.

[8]Indeed, Plaintiff's expert witness admits that he cannot rule out Plaintiff's having been contaminated by alternative sources.

as to whether it was the true cause.  There is simply no adequate evidentiary basis to conclude that it is more likely than not that Plaintiff contracted *E coli* from Defendants' cheeseburger.

The cases cited by the Plaintiff are not to the contrary.  In *Roney v. Wendy's Old Fashioned Hamburgers of New York, Inc.,* 2006 WL 696251 (D.Me.), Plaintiff ate part of a burger at a Wendy's restaurant, and a day or two later started to feel sick.  *Id.* at *2.  Later, she was sent to the hospital, and diagnosed with *E coli* poisoning.  *Id.*  Although the Court found the case "an extremely close one to call," the Court ultimately concluded that the case could to be sent to the jury on the issue of causation.  *Id.* at *10.  *Roney,* however, is distinguishable as in that case the plaintiff presented direct evidence that the burger in question was undercooked.  Specifically, the plaintiff stated that after she took two bites from her cheeseburger "roughly a tablespoon of blood...akin to the blood that would come out of a fresh wound...came out of the sandwich."  *Id.* at *2.[9]  Thus, the plaintiff presented direct evidence that the burger in question was dangerously undercooked (to say the least), and thus a potential carrier of *E coli.*  Here, the Plaintiff presents no evidence that the burger in question was improperly cooked; on the contrary, she states that the burger looked brown and appeared to be cooked through.[10]  Thus, *Roney* fails to support her position.

---

[9]She also observed the bun to be saturated with blood.  *Id.*

[10]Although, as Plaintiff points out, it is still possible that the burger was not heated to a temperature sufficient to kill *E coli,* there is simply no evidence that the burger was undercooked, and to conclude otherwise would be merely to speculate.

Nor does *Winnicki v. Bennigan's,* 2006 WL 319298 (D.N.J.) support the Plaintiff's position.  In that case, the plaintiff ate a Caesar salad at a restaurant at night.  *Id.* at *1.  Early the next morning the plaintiff felt nauseous, and then proceeded to throw up and have diarrhea.  *Id.*  Later, plaintiff went to the hospital, was diagnosed with acute renal failure, and underwent a kidney transplant.  *Id.*  The Court found that the plaintiff had presented enough evidence to present a jury question on the issue of causation.  *Id.* at *16.  Crucial to the Court's ruling, however, was the expert witness's opinion that the plaintiff's symptoms were caused by something eaten within the previous approximately twelve hours; this finding strongly implicated the salad.  *Id.* at *12, *15.[11]  Here, with an incubation period of nine days, there is an absence of a strong temporal connection between the Plaintiff's consuming the cheeseburger and the onset of her symptoms.  Indeed, Plaintiffs symptoms occurred less than one day after consuming Defendants' cheeseburger, instead of the typical three to four days.  Thus, this case is also distinguishable from *Winnicki.*

In short, the above cases fail to support the Plaintiff's position.  Accordingly, relying on *Campbell* and *Thacker,* this Court concludes that the Defendants are entitled to summary judgment.

It is therefore **ORDERED AND ADJUDGED** that:

---

[11]The Court noted that "a strong temporal relationship between a plaintiff's exposure to a particular object and subsequent illness, has been considered a proper basis for an expert opinion on causation."  *Id.* at *16.

1.      Defendants' Motion for Summary Judgment (Dkt. 47) jointly submitted by Defendant Tampa Hotel-VEF IV Operator, Inc., and Defendant Hyatt Corporation is hereby granted.

2.      The Clerk is directed to enter final summary judgment in favor of Defendant Tampa Hotel-VEF IV Operator, Inc., and Hyatt Corporation, and against Plaintiff Karen S. Colson.

3.      The Clerk is directed to terminate any pending motions as moot and to close this case.

        **DONE** and **ORDERED** in Tampa, Florida on November 15, 2011.


                                        _____
                                        JAMES S. MOODY, JR.
                                        UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Odd\2010\10-cv-9.msj.47.wpd